**Phyllis PRUITT, Individually and as Mother and Next Friend of bnf Katie C. Pruitt, Plaintiffs–Appellants,**

v.

**P.P.G. INDUSTRY, INC., Defendant–Appellee.**

No. 89–8557.

United States Court of Appeals, Eleventh Circuit.

March 1, 1990.

John Scott Husser, Mundy & Gammage, Cedartown, Ga., for plaintiffs-appellants.

Nicholas S. Papleacos, Stokes, Shapiro, Fussell & Wedge, Atlanta, Ga., James R. Miller, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for defendant-appellee.

Before CLARK, Circuit Judge, RONEY *, Senior Circuit Judge, and ATKINS **, Senior District Judge.

PER CURIAM:

This is a wrongful death suit brought by decedent's wife and daughter against the manufacturer of a cleaning solvent. They appeal the district court's grant of summary judgment in favor of the defendant based on its decision that adequate warn-

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

ings were given concerning the dangers that could be encountered in the use of the product. We affirm.

Decedent Homer T. Pruitt was employed as a supervisor for Lockheed Corporation at its plant in Marietta, Georgia. He was working in the fuselage area of an aircraft on May 15, 1987, when he collapsed and later died. Based on an autopsy, the coroner determined that Pruitt's death was caused by exposure to fumes and residue from a cleaning and degreasing solution used by Lockheed in the maintenance of its aircraft. This solvent, 1–1–1–Trichloroethane was produced by defendant P.P.G. Industry, Inc. under the registered trade name Tri–Ethane 366. The solvent was shipped to Lockheed in 55–gallon drums, on which PPG had attached a warning label. The label states in large bold letters, "WARNING! VAPOR HARMFUL" and further states in smaller letters:

DO NOT BREATHE VAPORS. High vapor concentrations can cause dizziness unconsciousness or death. USE ONLY WITH ADEQUATE VENTILATION. Ventilation must be sufficient to limit employee exposure to Tri–Ethane below permissible limits.... DO NOT SWALLOW. Swallowing may cause injury or death.

The label warns that one should not attempt to induce vomiting in a person who has swallowed the substance. If a person has difficulty breathing after inhalation, or if a person has swallowed some of the solvent, he should contact a physician. P.P.G. also provided an information sheet to Lockheed warning of the dangers, including death, resulting from inhalation of the solvent.

In arguing that this warning is not sufficient as a matter of law, plaintiffs argue that there is a distinction between "inhalation" of gaseous materials and "aspiration" of liquids. Decedent died because he allegedly aspirated aerosolized liquid droplets of Tri–Ethane, created by the use of pump spray bottles in Lockheed's

** Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

cleaning process. This aspiration led to chemical pneumonitis, a condition in which the victim's lungs fill with liquid. Inhalation of the solvent's vapors allegedly would have produced a different physical reaction and cause of death, cardiac arrest.

Plaintiffs contend that the label warned of the dangers of inhalation, and is not adequate to warn of the dangers of aspiration. We affirm the district court's decision that P.P.G.'s warning was sufficient as a matter of law to cover the dangers of aspiration. Assuming the plaintiffs are correct that inhalation of Tri–Ethane in gaseous form produces a different physical reaction than aspiration of the substance in liquid form, the warning adequately placed Lockheed and its employees on notice of the danger of each action. A reasonable viewer of P.P.G.'s label would have to conclude from the warning that "breathing" or "inhaling" the solvent in liquid form was at least as dangerous as inhalation of its vapors and that appropriate precautions should be taken in any event, namely, adequate ventilation and avoidance of direct contact with the substance in either form. Since inadequacy of the warning is a necessary element of the plaintiffs' cause of action, see *Copeland v. Ashland Oil Co.*, 188 Ga.App. 537, 373 S.E.2d 629, *cert. denied*, 188 Ga.App. 911, 373 S.E.2d 629 (1988), and since the plaintiffs failed to adduce any evidence showing they could prove this element at trial, the district court correctly granted summary judgment in favor of P.P.G. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The plaintiffs moved to strike affidavits submitted by P.P.G. in support of its motion for summary judgment, claiming that the affidavits violated Fed.R.Civ.P. 56 in various ways. There was no error in the district court's denial of this motion.

Plaintiffs assert that their constitutional right to trial by jury was violated by the district court's use of the federal standard for granting summary judgment, as set out in Rule 56 in this case. The argument is that by invoking its statutory right of removal of the case from state court,

P.P.G. unconstitutionally circumvented the state summary judgment standard. Appellants did not raise this issue before the district court, nor have they demonstrated, in light of the *Copeland* case, *supra*, that a different result would obtain under the state standard. There appears to be no legal support for the general contention that the constitutional right to a jury trial requires a federal court to apply a state standard for the award of summary judgment in a diversity case.

AFFIRMED.